THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHAD PARRIS,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | CASE NO. C14-1305-JCC<br><br>ORDER REMANDING CASE TO SOCIAL SECURITY COMMISSIONER |

This matter comes before the Court on the Honorable Magistrate Judge Brian Tsuchida's Report and Recommendation regarding Plaintiff's Social Security appeal (Dkt. No. 18). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby ADOPTS IN PART the Report and Recommendation, REVERSES the Commissioner's final decision, and REMANDS for further administrative proceedings pursuant to 42 U.S.C. § 405(g) for the reasons explained herein.

I.      BACKGROUND

Mr. Parris was born on February 15, 1958 and was fifty-three years old at the time of his Social Security application. Dkt. No. 12, Ex. 14 at 7. Following high school graduation, he had worked as a school custodian and store clerk. Dkt. No. 12, Ex. 2. In 2004, while employed in the latter capacity, a workplace accident caused his back to "snap." Dkt. No. 12, Ex. 2 at 18. As a

result, he allegedly suffers severe lumbar spine degenerative disc disease and spondylosis that have prevented him from working. Dkt. No. 12, Ex. 7 at 33. His injury has given rise to a host of other ailments including obesity, affective disorder, personality disorder, substance abuse, attention deficiency disorders, and mild but recurrent bouts of Methicillin-resistant Staphylococcus aureas.

In 2011, Mr. Parris applied for Social Security Disability Income but was rejected. The Administrative Law Judge (hereafter "ALJ") based this decision on his review of Mr. Parris's medical records, including the medical examination performed by Dr. Mark Heilbrunn, and on the lengthy deposition of the applicant. The ALJ analyzed this evidence in five steps, pursuant to 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ found Mr. Parris had not been substantially and gainfully employed since 2004. Dkt. No. 12, Ex. 2 at 13. At the second, he found that none of Mr. Parris's ailments equated to a listed impairment. Dkt. No. 12, Ex. 2 at 14–16. At the third, he found that Mr. Parris retained a Residual Functional Capacity (hereafter "RFC") for light work. Dkt. No. 12, Ex. 2 at 16. Mr. Parris could "understand, remember, and carry-out the simple instructions of jobs . . . He [could] make judgments on simple, work-related decisions, respond appropriately to supervision and co-workers, and deal with changes in a stable work environment. He [could have occasional interaction with the general public." Dkt. No. 12, Ex. 2 at 16. At the fourth, the ALJ recognized that such an RFC precluded Mr. Parris from working again as a custodian or clerk. Dkt. No. 12, Ex. 2 at 20. The ALJ concluded at the fifth step, however, that Mr. Parris would be capable of working as a house cleaner and small parts assembler, jobs "which exist in significant numbers in the national economy." Dkt. No. 12, Ex. 2 at 21. Consequently, the ALJ found that Mr. Parris was not disabled. Mr. Parris filed an administrative appeal but the Appeals Council denied review. Dkt. No. 12, Ex. 2 at 2.

He therefore brought this action on August 22, 2014, asking that the Court find him to have become disabled as of August 1, 2005 and remand to the SSA for calculation of his award. Dkt. No. 3. He argues that the ALJ improperly rejected Dr. Heilbrunn's conclusion that his RFC

1 limited him to sedentary work and improperly impugned his credibility. On February 3, 2015,
2 Judge Tsuchida issued a Report and Recommendation addressing Mr. Parris's arguments. Dkt.
3 No. 18. He recommended further proceedings with a vocational expert to determine the
4 significance of Dr. Heilbrunn's conclusions and an affirmation of the ALJ's credibility
5 assessment. Dkt. No. 18 at 7. The Court largely adopts Judge Tsuchida's recommendations.

6 **II.     DISCUSSION**

7       **A.     Dr. Heilbrunn's Medical Opinion**

8       The ALJ rejected Dr. Heilbrunn's conclusion that Mr. Parris was limited to sedentary
9 work because he believed it contradicted the doctor's objective findings and Mr. Parris's
10 reported daily activities. Dkt. No. 12, Ex. 2 at 20. When one doctor's medical opinion has not
11 been challenged by another, however, the ALJ must find "clear and convincing reasons" to reject
12 it. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Such reasons must be "specific[,]
13 legitimate," and supported by substantial evidence. *Id.* at 831.
14       Dr. Heilbrunn based his conclusions upon his January 2011 examination of Mr. Parris
15 and his review of relevant medical records. During the examination, he found that Mr. Parris
16 "manifest[ed] postural range of motion limitations of his hip and lumbar back," "could be
17 expected to sit for at least 20-25 minutes uninterrupted . . . and has a maximum sitting capacity
18 of 5 to 6 out of 8 hours, with periods for postural repositioning." Dkt. No. 12, Ex. 7 at 37. He
19 could also "be expected to stand/walk for at least 20 minutes uninterrupted, as manifested in the
20 examination room/clinic, and has a maximum standing/walking capacity of 3-5 out of 8 hours."
21 Dkt. No. 12, Ex. 7 at 37. While he could lift items of up to eight pounds easily, he could not lift
22 ten pounds without "increased lumbar pain and he was unable to carry this out for more than a
23 few minutes." Dkt. No. 12, Ex. 7 at 37. Dr. Heilbrunn also reviewed a 2008 MRI scan of Mr.
24 Parris's lumbar spine. Dkt. No. 12, Ex. 7 at 32. That scan showed multilevel disc disease,
25 neuroforaminal narrowing, and diffuse disc bulging.
26       The ALJ rejected Dr. Heilbrunn's conclusion limiting Mr. Parris to sedentary work

because the doctor had found that Mr. Parris was "able to complete all ranges of motion within his ability and mount/dismount the examination table without assistance. He was able to hop down from the examination table without the use of a step stool." Dkt. No. 12, Ex. 7 at 37. He could stoop almost to the floor and "effect a partial crouch, kneel, and crawl." Dkt. No. 12, Ex. 7 at 37. Such findings, the ALJ concluded, demonstrated that Mr. Parris's disc disease was "not significant." Dkt. No. 12, Ex. 2 at 20.

The ALJ, however, failed to address one of Dr. Heilbrunn's finding limiting Mr. Parris's carrying capacity to eight pounds. Because the regulatory definition of "light work" requires "frequent lifting or carrying of objects weighing up to ten pounds," this finding would support the Doctor's conclusion that Mr. Parris is incapable of such work. 20 C.F.R. § 416.967(b). This finding is uncontradicted by the report of Mr. Parris's daily activities, including preparing meals, cleaning and laundry, and household repairs. Such chores do not require the frequent lifting and carrying of more than ten pounds.

Accordingly, the ALJ failed to provide clear and convincing reasons to reject Dr. Heilbrunn's conclusion limiting Mr. Parris's RFC to sedentary work. This conclusion requires the ALJ to reexamine whether there are less-than-light jobs that Mr. Parris might remain able to perform. Without further evaluation and vocational expert testimony on this question, the Court can only speculate as to whether this would be the case.

**B.    Mr. Parris's Testimony**

The ALJ must conduct a two-step analysis when assessing the credibility of a claimant's testimony regarding symptoms and subjective pain. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). He must first determine "whether the claimant has presented objective medical evidence of the underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. In doing so, "she need only show that it could reasonably have caused *some* degree of the symptom." *Id.* (emphasis added). The ALJ may then only reject the claimant's credibility when he has "specific, clear and convincing reasons" based

on affirmative evidence to do so. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). He cannot do so "merely because [the testimony is] unsupported by objective evidence." *Id.* at 722.

Mr. Parris has met his burden under the first step by presenting objective medical evidence of his subjective symptoms. In addition to the MRI scan and Dr. Heilbrunn's opinion, he states that his back impairment prevented him from lifting and carrying more than five pounds and walking consistently. If he carried more his back and hip would "cramp up and [he needed] to stop and take a rest." Dkt. No. 12, Ex. 14 at 13.

At the second step, the ALJ challenged the credibility of these claims based upon contradictions in Dr. Heilbrunn's findings, by Mr. Parris's choice of treatment to alleviate his ailment, and by his alleged substance usage. The Court considers these challenges.

### i) Medical findings

Because the ALJ must point to additional affirmative evidence to contradict Mr. Parris's credibility rather than merely argue that it is unsupported, the ALJ's doubts regarding the MRI scan and Dr. Heilbrunn's testimony are irrelevant to a determination of Mr. Parris's credibility.

### ii) Mr. Parris's "conservative treatment"

The Court next considers the ALJ's contention that Mr. Parris's symptoms are inconsistent with his choice of conservative treatment: over the counter muscle relaxants, low back stretching, and use of hot and cold therapies. Dkt. No. 12, Ex. 2 at 17. The ALJ found that evidence of such limited treatment is sufficient to "discount an individual's testimony regarding the severity of an impairment." Dkt. No. 16 at 8 (quoting *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)). This reasoning ignores Mr. Parris's testimony that he also underwent physical therapy and took prescribed Vicodin, a more robust pain medication. Dkt. No. 12, Ex. 8 at 5. Regardless, the conservative nature of the treatment does not inherently render it inappropriate as a palliative for his serious pain.

### iii) Mr. Parris's alleged substance use

The ALJ improperly rejected Mr. Parris's credibility based on his alleged abuse of

1  Vicodin and cigarettes. Mr. Parris takes half a pill of prescribed Vicodin every two or three days;
2  there is no indication that he has abused it. Dkt. No. 12, Ex. 14 at 12. The ALJ, however, found
3  this relevant to his credibility because he had told another doctor in November 2011 that he had
4  been "clean from the pain pills for over a year . . . he [is] not on any pain pills now." The Court
5  finds no discrepancy between Mr. Parris's two statements. The 2011 statement may be
6  reasonably interpreted to express that he was "clean" in that he had not abused pain pills for over
7  a year and that he was not on any at the time of the statement. Dkt. No. 16 at 8. Furthermore, Mr.
8  Parris clarified that he did not begin taking Vicodin until January 2012, several months after the
9  2011 statement. Dkt. No. 17 at 6. The ALJ cannot fault Mr. Parris for not taking more serious
10 medication such as Vicodin and then fault him again for taking it. Nor is the fact that Mr. Parris
11 smokes "despite having known impairments" relevant to his *credibility*. Dkt. No. 12, Ex. 2 at 18.
12 The Court notes not only the lack of any proximate connection between such a habit and lumbar
13 pain, but also the addictive quality of cigarettes. It would be

> "extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when she testifies that the condition is serious or painful. Given the addictive nature of smoking, the failure to quit is likely attributable to factors unrelated to the effect of smoking on a person's health . . . such as the addictive nature of the product impairs their ability to stop."

*Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). Therefore, Mr. Parris's smoking habit is not a legally sufficient reason for discounting his credibility.

### iv)   Mr. Parris's disability onset date

The Court finds Mr. Parris's credibility questionable on one limited issue. Mr. Parris asked the SSA, and now the Court, to recognize an onset date of August 1, 2005. Nevertheless, he also, and candidly, reports that during administrative hearings he amended his onset date to September 2011, the date of his initial benefits application. Dkt. No. 12, Ex. 14 at 6. Because of this inconsistency, and because of the greater recency with which the 2011 date was offered, the Court will accept September 2011 as the putative onset date.

As a general matter, however, the ALJ did not provide clear and convincing reasons for his adverse credibility determination. For the purpose of further proceedings, The ALJ must reconsider Mr. Parris's testimony regarding his subjective symptoms and their severity as he has given it.

### III. CONCLUSION

Given the current state of fact-finding, the Court is unable to affirm or offer a final rejection of the ALJ's conclusions. Further proceedings are necessary. The Court finds that, going forward, the ALJ must reconsider Dr. Heilbrunn's conclusions and Mr. Parris's testimony regarding his subjective symptoms. The Court further finds that the appropriate onset date to consider in future proceedings is September 2011. For the foregoing reasons, Judge Tsuchida's Report and Recommendation (Dkt. No. 18) is ADOPTED IN PART. The ALJ's determination is REVERSED and REMANDED for further proceedings in accordance with this Order.

DATED this 19th day of March 2015.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE